

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

March 30, 2023 11:46 AM
SX-2023-CV-00112

**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| Andrew Russell, | **SX-2023-CV-_____** |
| *Plaintiff,* | |
| v. | **Complex Litigation Division** |
| | **ACTION FOR DAMAGES** |
| Lockheed Martin Corp., *and* | |
| John Doe, Inc. | **Jury Trial Demanded** |
| *Defendants,* | |

## COMPLAINT

Plaintiff Andrew Russell brings this action for damages under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is a citizen and resident of Baytown, Texas of the United States.

2.     Defendant Lockheed Martin Corp. is a Maryland corporation, having its principal place of business in Maryland. It is subject to the specific personal jurisdiction of this Court. It is the successor-in-interest to Martin Marietta Corp., Martin Marietta Aluminum Properties Corp., Martin Marietta Aluminum Corp., Martin Marietta Alumina Corp., Harvey Aluminum, Inc., and Harvey Alumina, Inc.

3.     John Doe, Inc., is currently in an alleged involuntary Chapter 7 bankruptcy, under information and belief, to be spurious and specious.  Defendant John Doe will be added as a Defendant when this bankruptcy is dismissed or when any automatic stay is lifted, as the Plaintiff intends to proceed against John Doe's legacy third-party general liability insurance policies – which are not considered an asset of the estate in bankruptcy.

4.     This Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

5.      Venue is this District is proper pursuant to 4 V.I.C. § 78 because the conduct complained of in this Complaint was carried out in substantial part within this judicial division.

## FACTUAL ALLEGATIONS RE: THE PLAINTIFF

6.      Plaintiff worked at the Alumina Refinery from 1971 to 1973.

7.      During his work at the Alumina Refinery, Plaintiff worked as a pump operator.

8.      In the course of his employment at the Alumina Refinery, Plaintiff was exposed to bauxite ore dusts (and their constituents and waste products), caustic soda, asbestos-containing materials (" 

9.                                                                                                              nent at the Alumina R                                                                                of toxic substances

10.

11.                                                                                                      certified B-reader) a p                                                                                    nsideration of Plaintiff

12.                                                                                              ished lung capacity, an

13.                                 .                                        .                         peated exposure to various toxic substances during his work at the Alumina Refinery.

14.      Plaintiff's injuries are current and will continue for the rest of his life. He seeks recompense for his pain and suffering; his medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of his life.

15.      Plaintiff fears the progression of his respiratory symptoms and reasonably fears that he may develop cancer as a result of persistent exposure to toxic materials and substances.

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

16.    Plaintiff is also at a medically and statistically significant increased risk of developing lung cancer, mesothelioma, and other cancers.

17.    Plaintiff also seeks punitive damages, as Defendants' actions and inactions, separately considered, were outrageous because of a reckless indifference to Plaintiff's rights.

### FACTUAL ALLEGATIONS VIS-À-VIS INDUSTRIAL EXPOSURES

18.    The U.S. Federal Government has long regulated the limits of industrial exposure to minerals, metals, chemicals, and other agents in the workplace. And the U.S. Virgin Islands has long regulated e

19.                                                                                           toxic dusts through so                                                                                     and worker monitoring

20.                                                                                           ate and/or reduce all d                                                                                    dust levels must be giv                                                                              equipment, including re

21.                                                                                           o 2000. The Alumina Refinery refined bauxite ore into alumina (aluminum oxide).

22.    Harvey Aluminum, Inc. built the Alumina Refinery. It leased the Alumina Refinery to its wholly-owned subsidiary, Harvey Alumina, Inc., which ran the refining operations and handled everything except for maintenance activities. Harvey Aluminum owned the appurtenances and equipment at the Alumina Refinery, which appurtenances and equipment were leased to Harvey Alumina. Harvey Aluminum also entered long-term contracts with mining companies for the purchase of bauxite ore to the Alumina Refinery. It shipped or arranged the shipment of purchased bauxite ore

to the Alumina Refinery for refinement. Harvey Aluminum changed its name to Martin Marietta

Aluminum, Inc. in approximately 1972.

23.     Martin Marietta Aluminum, Inc. ("M/M Aluminum") succeeded to Harvey

Aluminum's rights and obligations under the bauxite ore supply agreement(s). Harvey Alumina

assigned its leasehold to Martin Marietta Alumina, Inc. ("M/M Alumina"), which assumed the

obligations of the lease. As under previous management, M/M Alumina ran the bauxite refining

operations, except for maintenance activities which M/M Aluminum handled. Also as under previous

ownership,                                                                        Refinery for

refining.

24.                                                                     Properties,

Inc. ("MM                                                           ds Alumina

Company (

25.                                                         relevant to

this action.                                                  e Alumina

Refinery, V                                          00 to 1995,

Glencore su

26.                                                  CO owned

and/or ope                                              maintenance

services.

27.     Bauxite is a naturally occurring material comprised of hydrated aluminum oxides and

aluminosilicates, iron oxides, titanium dioxide, silica, beryllium, and mixtures of other materials;

including, quartz, clay minerals, gibbsite [Al(OH)], boehmite [ALO(OH)], and diaspore [ALO(OH)].

Bauxite is the principle ore of alumina (AL2O3).

28.     During the refining process, bauxite ore is, among other activities, crushed and ground,

which continuously creates large amounts of dust. In his work at the Alumina Refinery, Plaintiff was

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

in constant contact with, and exposed to, this unrefined bauxite dust and its constituents.

29.     Caustic soda is added to the ground ore, some of which becomes airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled caustic soda dust.

30.     The refinement process involves many hot processes that require the maintenance of high temperatures. To that end, the Alumina Refinery used ACM to insulate vessels, machinery, and pipe. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled ACM.

31.     The finished alumina product is a white/silver powder. The alumina is highly susceptible                                                                    he Alumina Refinery, P

32.                                                                              sometimes called "red                                                               inum oxide (Al2O3), si                                                               um dioxide (TiO2), pot                                                               05), arsenic (As),  lead                                                               radioactive uranium ar                                                               vork at the Alumina R

33.                                                                              bauxite ore dust, its co                              .                                  .                ACM, and refined alumina. Research shows that exposure to these elements (or mixtures thereof) in industrial settings can cause serious medical problems, including decreased FEV1, radiographic abnormalities, increased opacities, upper and lower respiratory symptoms (shortness of breath, wheeze, chest tightness, rhinitis), pulmonary fibrosis, mixed dust pneumoconiosis, interstitial fibrosis, fibrotic lesions, parenchymal changes, lung cancer, and aluminosis.

**CAUSE OF ACTION AGAINST LOCKHEED MARTIN**

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

AS SUCCESSOR-IN-INTEREST TO MARTIN MARIETTA CORP.

**Count 1 – Negligent Undertaking**

34.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Lockheed Martin Corp. is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands, as the successor-in-interest to Martin Marietta Corp. ("M/M Corp.").

35.     The Alumina Refinery's safety department was chronically understaffed. It never had an industri                                                              regulations and good s

36.                                                                      , education, knowledge,                                                          l by fugitive dusts, inclu                                                         e.

37.                                                                      to address patent safe                                                           er, the staff lacked the                                                          used by the chronic inh

38.                                                                      mpany – to fill these de

39.     M/M Corp. issued its own safety policies, which were much more robust than any policies that were issued and in-effect locally. That's because M/M Corp. had the appropriate staff, with the appropriate expertise, to develop a sufficient safety policy. M/M Corp.'s safety policies, by their own terms, applied to the Alumina Refinery.

40.     M/M Corp. had a robust respiratory policy, but it did not make this policy or any of the accompanying educational materials available to the managers on St. Croix. Ultimately, M/M Corp.'s respiratory policies were not followed at the Alumina Refinery.

41.   But this failure went a step further. M/M Corp. misled the staff on St. Croix to believe that bauxite was non-toxic. Workers at the Alumina Refinery relied on M/M Corp. to provide hazards information. But the local staff was of the mistaken belief that bauxite was merely a nuisance dust because they lacked the technical expertise to understand that the term "nuisance" did not mean that the dust was inert if inhaled. The local staff relied on M/M Corp. to provide them with MSDS sheets because they were not available locally on St. Croix. However, even when these sheets were made available, they were ignored because, as M/M Corp. told the Alumina Refinery that bauxite ore was safe to brea

42.                                                                                    dents M/M Aluminum                                                                         programs. However, t                                                                   rwise – as a formal occu

43.                                                                                    ety analyses from M/M                                                                      M/M Corp. follow up w

44.                                                                                    : job tasks; identifying                                                                    ol personal exposures;                                                            s, including bauxite ore and its dusts.

45.   M/M Corp. conducted bi-annual plant audits and inspections The audits extended to verifying compliance with M/M Corp. respiratory policy, the vitality of its occupational safety health programs, whether it was conducting job safety analyses, etc. M/M Alumina relied upon M/M Corp.'s audits because it was unable to adequately screen for potential problems with its own resources.

46.   However, M/M Corp. failed to fulfill this audit function, as it failed to recognize that the Alumina Refinery was not assessing the possible damage that airborne bauxite dust and other

fugitive dusts were causing to the workforce, but even worse, failing to ensure that the Alumina Refinery corrected these glaring deficiencies. As a result, M/M Corp. couldn't effectively perform its audit role.

47.     These failures to appropriately audit the operations of the Alumina Refinery were fundamental in light of how the Martin Marietta family of companies were structured. M/M Corp.'s subsidiaries had only the basic knowledge and staffing necessary to complete their immediate tasks. Anything beyond that immediate task was need-to-know, which required the input and assistance of corporate.                                                                liaries were following c

48.                                                                    ery in 1976 and in 1981

49.                                                                    ey revealed airborne sil                                                        lditional air sampling to                                                        nd the need for surveilla                                                        t down the Alumina  R                                                        staff was immediately

50.                                                                    1981 by the corporate family's lone industrial hygienist. The survey recommended a robust sampling program to assess the level of suspended dust particles; that the St. Croix plant conduct pulmonary function testing and respirator fit tests; and that St. Croix develop its own sampling capacity. M/M Corp. knew that these critical safety policies should have been in place for years, and yet still it failed to adequately follow up on and ensure that the Alumina Refinery implemented these recommendations. The Alumina Refinery eventually purchased some air sampling equipment, but that equipment largely went unused.

51.     M/M Corp. undertook to render services to its three subsidiaries at the Alumina Refinery—M/M Aluminum, M/M Alumina, and MMAP (collectively, "M/M Subsidiaries"). It should have recognized the services it provided to its M/M Subsidiaries and/or the Alumina Refinery were necessary for the protection of Plaintiff, generally or in particular.

52.     M/M Corp. failed to exercise reasonable care. This failure to exercise reasonable care increased the risk of harm to Plaintiff. M/M Corp. undertook to perform a duty owed by one or more M/M Subsidiaries to Plaintiff. The M/M Subsidiaries and/or Plaintiff relied on M/M Corp. to fulfill its undertak

53.                                                                                    ndertaking.
Consequen                                                                             d liable for,
the harm a                                                                            sts (and its
constituent

                                                                                      c.

**Count 2 –**

54.                                                                                    graphs as if
fully set for                                                                         ce with the
rule articula                                                                         ccessor-in-
interest to Martin Marietta Aluminum, Inc.

55.     M/M Aluminum was a legal possessor of the Alumina Refinery from 1968 to 1985, and it was a possessor during Plaintiff's working years at the Alumina Refinery.

56.     M/M Aluminum had knowledge of the harmful nature of, and danger posed by, bauxite and alumina dusts (and their constituents) at all times while Plaintiff was on the Alumina Refinery premises. It had a duty to exercise reasonable care including providing Plaintiff with a safe work environment and warning Plaintiff of any dangers that it could not make safe.

57.    M/M Aluminum knew or should have known that these exposures posed a foreseeable and unreasonable risk of harm to Plaintiff and others. This foreseeable harm could have been prevented if M/M Aluminum had implemented and enforced proper safety measures at the Alumina Refinery, and had also warned Plaintiff of the dangers.

58.    M/M Aluminum knew or should have known that Plaintiff would not discover or realize the danger, as it was in a superior position of power and knowledge.

59.    M/M Aluminum breached its duty by failing to use reasonable care to protect Plaintiff of the dang

60.

mina dusts,

thei

rcinogenic,

haz

to provide

effe                                                                                          ing rooms,

sho

nd alumina

dust exposures, as well as exposure to as bauxite's hazardous constituents and waste products;

f.    Failing to timely and appropriately train Plaintiff and his co-workers; and

g.    Failing to timely and appropriately engage in medical surveillance of exposed persons, including Plaintiff; to timely and appropriately monitor workforce exposure and health, as well as that of their families, including that of Plaintiff.

61.    The failures of M/M Aluminum were also in violation of the law. At all relevant times, the V.I. government proscribed causing or permitting materials to be handled, used, constructed,

altered, repaired, or demolished without taking appropriate precautions to prevent particulate matter

from becoming airborne. In particular, the following precautions are required, among others:

        a.    The use, where possible, of water or suitable chemicals for the control of dusts

in quarrying operations;

        b.    The application of asphalt, water, or suitable chemicals on dirt roads, materials,

stockpiles, and other surfaces that can give rise to airborne dust; and

        c.    The installation and use of hoods, fans, and fabric filters to enclose and vent

the

62.                        gence *per se*.

Plaintiffs at                        ions, as it is

precisely th                      ost likely to

be affected

63.                        a. When it

executed th                      efinery was

in disrepair                      levices, and

tools that d

64.                        Refinery in

repair. The                      , which the

performance of M/M Aluminum's agreement would have prevented. M/M Aluminum failed to

exercise reasonable care in performing its obligation to keep the Alumina Refinery in a state of repair.

65.    The Alumina Refinery is dirty by design. Extracting alumina (aluminum oxide) from

raw bauxite ore generates a large and continuous amounts of respirable dust from moving it with

heavy machinery, shoveling it, crushing it, etc. Mud tailings are dried in ponds, and during the dry

season, this mud becomes dirt, and once again the workforce is exposed to respirable bauxite dusts

and alumina dusts, including their constituents and waste products.

66.     M/M Aluminum knew, or by the exercise of reasonable care could have discovered, that this condition of the Alumina Refinery involved an unreasonable risk of harm to the workforce on the premises and members of their families. It had reason to suspect that M/M Alumina would not correct the condition before admitting the workforce to the Alumina Refinery. And it failed to exercise reasonable care to discover or to remedy the condition or otherwise to protect the workforce and their families against the condition.

67.     M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintif                                                                            alumina, as well as the 

**Count 3 –**

68.                                                                              graphs as if fully set fo                                                                       Restatement (Second) of                                                                       successor-in-interest t

69.                                                                              ne Alumina Refinery fo

70.                                                      .                                         f to use the bauxite ore, as well as expect that Plaintiff could be endangered by the probable uses of bauxite ore—namely, refinement. It knew or had reason to know that bauxite ore is dangerous or likely to be dangerous during the refinement process. It had no reason to believe that the Alumina Refinery or Plaintiff  would realize the dangerous condition of bauxite ore.

71.     M/M Aluminum failed to exercise reasonable care to inform either the Alumina Refinery or Plaintiff of the dangerousness of bauxite ore or the facts which make bauxite ore likely to be dangerous.

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

72.     Plaintiff was harmed as a result of M/M Aluminum's failures. M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff has sustained as a result of that exposure.

## Count 3(b) – Refinery Machinery & Equipment as Chattel

73.     Prior to 1986, M/M Aluminum leased refining machinery, appurtenances, and equipment—chattels—to M/M Alumina for use at the Alumina Refinery.

74.     The Alumina Refinery is outfitted with machinery and equipment designed to move and pulver                                                                 hutes, ball grinders, di                                                                  create and spread larg                                                                 orce at the Alumina Re                                                                 ts.

75.                                                                               f to use the refinery ma                                                                 he probable uses that r                                                                 laintiff was harmed by

76.                                                                               hinery and equipment                                                                 l no reason to believe t                                                                 refinement machinery and equipment. And it failed to exercise reasonable care to inform either M/M Alumina or Plaintiff of the dangerousness of refinement machinery and equipment or the facts which make refinement machinery and equipment likely to be dangerous.

77.     Consequently, M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff has sustained as a result of this exposure.

## Count 3(c) – Heavy Equipment as Chattel

78.     Prior to 1986, M/M Aluminum leased heavy machinery—chattels—to M/M Alumina for use at the Alumina Refinery. Workers at the Alumina Refinery used bulldozers, backhoes, cranes, dump trucks, and other large machinery to unload bauxite ore from vessels, position the raw bauxite ore in the storage shed, load raw bauxite ore onto conveyers, and to cleanup excess materials.

79.     The use of heavy equipment at the Alumina Refinery created and spread large amounts of bauxite dusts and its constituents. Consequently, the workforce at the Alumina Refinery is invariably exposed to and inhales bauxite ore dusts and its constituents.

80.                                                                                                              num to the
Alumina R                                                                                                   machinery.

81.                                                                                                         f to use the
heavy equip                                                                                              s that heavy
equipment                                                                                               ipment was
dangerous                                                                                               believe that
the M/M A                                                                                               nent. And it
failed to ex                                                                                            ess of heavy
equipment

82.                                                                                                     d is legally
responsible                          .                    .                                     .      as the harm
and damages Plaintiff has sustained as a result of this exposure.

## Count 4 – Chattel Unlikely to be Made Safe for Use

83.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Lockheed Martin is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands, as the successor-in-interest to M/M Aluminum.

## Count 4(a) – Bauxite as Chattel

84. M/M Aluminum supplied bauxite ore—a chattel—to the Alumina Refinery for use.

85. While M/M Aluminum provided warnings and/or MSDS sheets to the operator(s) of Alumina Refinery, those warnings and MSDS sheets went unheeded. M/M Aluminum knew or should have known that its warnings and/or MSDS sheets were not being communicated to the workforce at the Alumina Refinery. M/M Aluminum knew or should have known that the bauxite ore was unlikely to be made reasonably safe before being put to the use in the manner expected—namely, refinement into alumina.

86.                                                                                                       nat Plaintiff would be in                                                                                                 as character of bauxite

87.                                                                                                       e and liable for, Plainti                                                                                              ges Plaintiff sustained a

88.                                                                                                       quipment— chattels—t                                                                                              tfitted with machinery                                                                                              equipment includes co

89. M/M Aluminum knew or should have known that the machines and equipment were unlikely to be made reasonably safe before being put to the use in the manner expected—namely, used in the processing of bauxite ore into alumina (aluminum oxide).

90. During refinement operations, these machines and equipment create and spread large amounts of bauxite ore dusts and its constituents. Consequently, the workforce at the Alumina Refinery was invariably exposed to and inhales bauxite ore dusts and its constituents.

91.     Plaintiff was a foreseeable user of the chattels, as well as endangered by the probable use of the chattels. He was ignorant as to the dangerous character of the machines and equipment was not contributorily negligent.

92.     M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents as a result of the dangerous machines and equipment, as well as the harm and damages Plaintiff sustained as a result of this exposure.

## Count 5 – Chattel for Use by Person Known to be Incompetent

93.                                                                                            graphs as if fully set fo                                                                             Restatement (Second) of                                                                        successor-in-interest t

94.                                                                                      tel—to the Alumina R

95.                                                                                   he Alumina Refinery wo                                                                     of physical harm to Pl                                                                             he Alumina Refinery ov                         .                 .                                  . policy and failed to abide applicable government regulations.

96.     M/M Aluminum should have expected that Plaintiff would be endangered by the use of bauxite ore at the Alumina Refinery.

97.     M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents , as well as the harm and damages Plaintiff sustained as a result of this exposure.

## Count 5(b) – Refinery Appurtenances as Chattel

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

98.     At all relevant times, M/M Aluminum leased refining machinery, appurtenances, and equipment—chattels—to M/M Alumina for use at the Alumina Refinery.

99.     The Alumina Refinery is outfitted with machinery and equipment designed to move and pulverize bauxite ore. This machinery and equipment includes conveyor belts, chutes, ball grinders, digestors, etc. During refinement operations, these machines and equipment create and spread large amounts of bauxite ore dusts and its constituents. Consequently, the workforce at the Alumina Refinery is invariably exposed to and inhales bauxite ore dusts and its constituents.

100                                                                                          ne Alumina

Refinery w                                                                                  nvolved an

unreasonab                                                                                  d reason to

know that t                                                                                 n adequate

respiratory

101                                                                                          gered by the

use of supp

102                                                                                          onsible and

liable for, l                                                                               pplying the

refinement                                                                                  d as a result

of his expo

## **Count 5(c) – Heavy Equipment as Chattel**

103.     At all relevant times, M/M Aluminum leased heavy machinery—chattels—to M/M Alumina for use at the Alumina Refinery. Workers at the Alumina Refinery used bulldozers, backhoes, cranes, dump trucks, and other large machinery to unload bauxite ore from vessels, position the raw bauxite ore in the storage shed, load raw bauxite ore onto conveyers, and to cleanup excess materials.

104.     The use of heavy equipment at the Alumina Refinery created and spread large amounts

of bauxite dusts and its constituents. Consequently, the workforce at the Alumina Refinery is invariably exposed to and inhales bauxite ore dusts and its constituents.

105.    M/M Aluminum knew or had reason to know that the owners and operators of the Alumina Refinery were using supplied heavy equipment in a manner that involved an unreasonable risk of physical harm to Plaintiff. In particular, M/M Aluminum knew or had reason to know that the Alumina Refinery owners and operators were incompetent, as they lacked an adequate respiratory policy and failed to abide applicable government regulations. M/M Aluminum should have expected that Plainti                                                                              a Refinery.

106                                                                               e and liable for, Plainti                                                                        g the heavy equipment                                                                        e to bauxite dusts and it

**Count 6 –**

107                                                                              graphs as if fully set fo                                                                        Restatement (Second) of                                                                        e successor-in-interest t

108                                                                              Aluminum operated an international, vertically-integrated alumina production operation, which included mining raw ore, shipping raw ore, overseeing refinement, finding purchasers of refined alumina, and shipping raw alumina to purchasers.

## Count 6(a) – Bauxite as Chattel

109.    Prior to 1985, M/M Aluminum supplied bauxite ore—a chattel—to the Alumina Refinery for use. The bauxite ore was ultimately supplied to the employees at the Alumina Refinery, who refined the bauxite ore into alumina.

110.    M/M Aluminum should have expected that Plaintiff, other employees at the Alumina Refinery, and their respective families would be endangered by the probable use of the bauxite ore. It failed to exercise reasonable care to make the bauxite ore safe for the use for which it was supplied. It failed to exercise reasonable care to discover the dangerous condition or character of the bauxite ore it supplied. And it failed to inform Plaintiff or the other employees at the Alumina Refinery of the discover the dangerous condition or character of the bauxite ore it supplied.

111.    Consequently, M/M Aluminum directly and proximately caused, and is legally responsible                                                                                                       as the harm and damag

112                                                                                      nances, and equipment-

113                                                                          ed to move and pulver                                                                  hutes, ball grinders, di                                                                      create and spread larg                                                                  force at the Alumina R                                                                        ents.

114                                                                          he Alumina Refinery, and their respective families would be endangered by the probable use of the refining machinery, appurtenances, and equipment. It failed to exercise reasonable care to make the refining machinery, appurtenances, and equipment for the use for which it was supplied. It failed to exercise reasonable care to discover the dangerous condition or character of the refining machinery, appurtenances, and equipment it supplied. And it failed to inform Plaintiff or the other employees at the Alumina Refinery of the discover the dangerous condition or character of the refining machinery, appurtenances, and equipment it supplied.

115.    Consequently, M/M Aluminum directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff sustained as a result of this exposure.

## Count 6(c) – Heavy Equipment as Chattel

116.    At all relevant times, M/M Aluminum leased heavy machinery—chattels—to M/M Alumina for use at the Alumina Refinery. Workers at the Alumina Refinery used bulldozers, backhoes, cranes, dump trucks, and other large machinery to unload bauxite ore from vessels, position the raw bauxite ore                                                                                        s materials.

117                                                                                        ge amounts of bauxite                                                                                        Refinery is invariably e

118                                                                                        he Alumina Refinery, a                                                                                        the heavy equipment.                                                                                        the use for which it wa                                                                                        ondition or character o                                                                                        he discover the dangerd

119                                                                                        d is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff sustained as a result of this exposure.

### CAUSES OF ACTION AGAINST LOCKHEED MARTIN, AS SUCCESSOR-IN-INTEREST TO MARTIN MARIETTA ALUMINA, INC.

## Count 7 – Premises Liability

120.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

121.    Lockheed Martin Corp. is liable to Plaintiff as a premise in accordance with the rule articulated in *Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373 (2014), as the successor-in-interest to M/M Alumina.

122.    At all relevant times, M/M Alumina was a legal possessor of the Alumina Refinery.

123.    M/M Alumina had knowledge of the harmful nature of, and danger posed by, bauxite and alumina dusts and its constituents, caustic fumes and materials, and asbestos at all times while Plaintiff was on the Alumina Refinery premises. It knew that the potential for exposure at the Alumina Refinery po

124                                                                                              laintiff with a safe work

125                                                                                              nplemented and enforc                                                                              ntiff of the dangers.

126                                                                                              er or realize the danger,

127                                                                                              ect Plaintiff by failing to                                                                              wironment.

128

a.    Failing to adequately monitor the concentration of bauxite and alumina dusts, caustic fumes and materials, and asbestos, as well as the dusts of its hazardous constituents and waste products, in the Alumina Refinery;

b.    Failing to take appropriate safety precautions regarding to toxic, carcinogenic, hazardous, and/or irritating dusts, fumes, and other substances;

c.    Failing to provide and require the wearing of protective clothing;

d.    Failing to provide effective masks, respirators, and/or fresh air sources;

e.      Failing to provide adequate changing rooms, showers, laundry, and other safety services for exposed workers;

f.      Failing to post warning signs;

g.      Failing to warn Plaintiff of the health risks associated with bauxite and alumina dusts, caustic fume and materials, and asbestos exposures, as well as exposure to as bauxite's hazardous constituents and waste products;

h.      Failing to timely and appropriately train Plaintiff and his co-workers;

of exposed

per

d health, as

wel

129                                                                                  causing or

permitting                                                                  hout taking

appropriate                                                                 ticular, the

following p

trol of dust

in q

ds or roads

under construction, materials, stockpiles, and other surfaces that can give rise to airborne dust; and

c.      The installation and use of hoods, fans, and fabric filters to enclose and vent the handling of dusty materials.

130.    M/M Alumina's failures to abide by Virgin Islands law constitutes negligence *per se*. Family members of workers at the Alumina Refinery, like Plaintiff, fall within the ambit of these legal protections, as it is precisely those exposed to materials that leave the premise that would be most

likely to be affected by the failure to abide.

131.    Consequently, M/M Alumina directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite, as well as the harm and damages Plaintiff sustained as a result of this exposure.

**CAUSES OF ACTION AGAINST JOHN DOE, INC. AS SUCCESSOR-IN-INTEREST
COSMOGONY II, INC. AS SUCCESSOR-IN-INTEREST TO GENERAL ENGINEERING CORP.**

**Count 8 – Negligence**

132                                                                           graphs as if
fully set for

133                                                                           ulted in the
release of a

134                                                                           ard against
and warn o                                                                    ely train its
employees                                                                     ly warn its
employees                                                                     oriate PPE.

135                                                                           t failed to
adequately                                                                    rticular, the
machinery                                                                     er, and as a
result, fugitive bauxite emissions were frequent.

136.    Both instances of negligent presented foreseeable risks of harm—namely, that Plaintiff, his co-workers, and others would come into contact with and inhale an inordinate amount of ACM and bauxite dust.

137.    GEC owed a duty of reasonable care under the circumstances. In this specific case, its duty was to perform its construction and maintenance duties with the due care necessary for a refinery contractor, with the understanding that the materials at the Alumina Refinery were dangerous and

required special precautions.

138.     However, GEC violated its duty of reasonable care as detailed above.

139.     GEC directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and asbestos.

## NOTICE OF PUNITIVE DAMAGES

140.     Plaintiff seeks punitive damages against Defendants.

141                                                                                              or done or with a willf

142                                                                                              eter similar conduct by                                                                   ate Plaintiff for the egr

143                                                                                              f the Virgin Islands Rul

WH

a.                                                                                  v, including punitive damages;

b.     He be awarded pretrial interest from the date of the initial Complaint through final judgment;

c.     He be awarded his costs; and

d.     The Court grant such additional relief as may be deemed just and proper.

Complaint
*Andrew Russell v. Lockheed Martin Corp., et. al.*

**DATED:**   March 30, 2023          Respectfully submitted,

Korey A. Nelson, Esq. (V.I. Bar No. 2012)
H. Rick Yelton, Esq. (V.I. Bar No. 2098)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
ryelton@burnscharest.com

Warren T. Burns, Esq. (V.I. Bar No. 2004)
Daniel H. Charest, Esq. (V.I. Bar No. 2020)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 370
Christiansted, USVI 00821
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com