```
 1                    UNITED STATES DISTRICT COURT
            DISTRICT OF THE VIRGIN ISLANDS (ST. CROIX DIVISION)
 2


 3   AUGUSTIN AUGUSTIN,            :Case No. 1:22-cv-00023-WAL-EAH
              Plaintiff,          :
 4   v                            :
                                  :
 5   GELNCORE, ET AL,             :St. Croix, Virgin Islands
              Defendants.         :September 13, 2023 at 1:05 p.m.
 6   . . . . . . . . . . . . . . . .

 7   MARTIN MATTHEW,              :Case No. 1:23-cv-00024-WAL-EAH
              Plaintiff,          :
 8   v                            :
                                  :
 9   LOCKHEED MARTIN CORP, ET AL, :
              Defendants.         :
10   . . . . . . . . . . . . . . . .

11   ANDREW RUSSELL,              :Case No. 1:23-cv-00025-WAL-EAH
              Plaintiff,          :
12   v                            :
                                  :
13   LOCKHEED MARTIN CORP, ET AL  :
              Defendants.         :
14   . . . . . . . . . . . . . . . .

15   BYRON PETERSON,              :Case No. 1:23-cv-00029-WAL-EAH

16            Plaintiff,          :
     v                            :
17                                :
     GLENCORE, LTD,               :
18            Defendants.         :
     . . . . . . . . . . . . . . . .
19
               TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
20           BEFORE THE HONORABLE EMILE A. HENDERSON III
                 UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25
```

**Associated Reporters Int'l., Inc.    518-465-8029**

```
1    FOR THE PLAINTIFFS

2
     AUGUSTIN AUGUSTIN,
3    MARTIN MATTHEW,
     ANDREW RUSSELL and
4    BYRON PETERSON:           J. RUSSELL B. PATE, ESQ.
                               RICK YELTON, ESQ.
5                              THE PATE LAW FIRM
                               POST OFFICE BOX 890
6                              ST. THOMAS, VI 00804
                               Email: pate@sunlawvi.com
7                                     sunlawvi@gmail.com

8    FOR THE DEFENDANTS

9    GLENCORE LIMITED:         DOUGLAS L. CAPDEVILLE, ESQ.
                               2107 COMPANY STREET, SUITE TWO
10                             CHRISTIANSTED, ST. CROIX VI 00820
                               Phone: 340-773-7275
11                             Fax: 340-773-7996
                               Email: videfense@capdevillelaw.com
12
                               JACQUES SEMMELMAN, ESQ.
13                             50 ROCKEFELLER PLAZA,
                               NEW YORK, NEW YORK, 10020-1605
14                             Telephone:1-212-940-6789
                               Email: jacques.semmelman@katten.com
15
     LOCKHEED MARTIN, CORP.: KEVIN RAMES, ESQ.
16                             K.A. RAMES, PC.
                               6 COMPANY STREET
17                             CHRISTIANSTED, VI
                               340-773-7284
18                             rameslaw.com

19

20   Transcription Service:
     Associated Reporters Int'l., Inc.
21   10 River Drive
     Massena, New York 13662

22

23   Proceedings recorded by electronic sound recording;

24   transcript produced by transcription service.

25
```

```
 1                    (The hearing commenced at 1:05 p.m.)
 2              COURT CLERK:  All rise.  The District Court
 3         of the Virgin Islands is now in session.  The
 4         Honorable Emile A. Henderson presiding.  Please be
 5         seated.  Today's proceeding is initial conference in
 6         the case of Augustin Augustin versus Glencore Ltd.,
 7         GEC, LLC and General Engineering Corporation, Civil
 8         number 2022-23.  And Martin Matthew versus Lockheed
 9         Martin Corporation, Glencore Ltd., Civil number 2023-
10         24.  Andrew Russell versus Lockheed Martin
11         Corporation and John Doe, Inc., Civil number 2023-25.
12         And Byron T. Peterson versus Glencore, Ltd., Civil
13         number 2023-29.
14              THE COURT:  Good afternoon, counsels,
15         please note your appearances for the record.
16              MR. PATE:  Good afternoon, Your Honor.
17         Russell Pate for the Plaintiffs.  And appearing with
18         me, Rick Yelton for the Plaintiffs.  Thank you.
19              THE COURT:  Good afternoon.
20              MR. SEMMELMAN:  Good afternoon, Your Honor
21         for Defendant Glencore Limited, Jacques Semmelman,
22         and with me is Douglas Capdeville.
23              THE COURT:  Good afternoon.
24              MR. RAMES:  Good afternoon, Your Honor.
25         Kevin Rames for Lockheed Martin Corporation in the
```

1    Matthew and Russell Case.

2        THE COURT:  Good afternoon.  All right.  So

3    we are here for an initial conference in this case to

4    go over the scheduling of these cases.  And as I

5    understand you all want to again, have the same

6    scheduling deadlines for these four cases together.

7    Is that correct?

8        MR. PATE:  No, Your Honor.

9        THE COURT:  Oh.

10        MR. PATE:  So I have very good news.

11        THE COURT:  Okay.

12        MR. PATE:  Our job as attorneys is to try

13    to reduce disputes in front of the Court.  It's the

14    first time I've -- we've successfully reduced every

15    dispute for this Court and you have nothing to do.

16        THE COURT:  Oh, well.

17        MR. PATE:  I'm shocked myself.

18        THE COURT:  I'm smiling.  All right, well,

19    tell me.

20        MR. PATE:  Both of the parties have now

21    told us that they will not oppose the motions for

22    remand in the twelve cases.  There's twelve total.

23    We filed the Arnold and Ken (unintelligible) Motions.

24    Both Defendants had their teams look at those.

25    They've said they will not oppose in the other ten.

1           Essentially that just leaves Judge Lewis to accept

2       those amended complaints and once they're accepted,

3       that breaks diversity and the cases would be

4       remanded.  That's -- that's where we're at this

5       point.  We are -- we are talking now on procedures

6       for the Superior Court and how we we'll coordinate

7       those, but there's really no matter even going to the

8       discovery dispute, we're going to roll all those --

9       paperwork and letters over to Judge Andrews or Judge

10      Willocks to deal with on remand.

11              THE COURT:  And just so I'm clear, that's

12      for all of them?

13              MR. PATE:  Yes, Your Honor.

14              THE COURT:  Including Russell?

15              MR. PATE:  Yeah.  Yes.

16              THE COURT:  Because Russell is a citizen of

17      Texas.  So I just want to make sure that everybody

18      agrees.  It doesn't matter they're the ones that re -

19      - they're the ones that brought it here so they don't

20      want it here anymore.  They can always agree to have

21      it go back.  So that's not the issue.  I just want to

22      make -- what your response to me was, or what your

23      statement was, was that once you add (unintelligible)

24      or at least the District Judge agrees to amend the

25      complaint, diversity would be broken.  But it seems

1  like it would be destroyed as to eleven of the twelve

2  because Mr. Russell is a citizen of Texas.

3          MR. PATE:  I'll let the Defendant speak to

4  that.  I know that's I believe Lockheed Martin and I

5  know Attorney Rames's office had looked at those

6  issues, but I know --

7          THE COURT:  I'm not begging to keep any

8  case here.  Right.  So I just want to make sure

9  that's clear.  I just want to make sure that for the

10  purposes of the record, that since you said the

11  amendment of the complaint would destroy diversity,

12  that is only accurate in eleven of the twelve cases.

13          So Attorney Rames, I just want to make sure

14  that everything is going back and the -- the filing

15  of -- I should take that back.  The removal you are

16  just agreeing to -- permitted to continue down at

17  Superior Court as it pertains to Russell.  I just

18  want to make sure.  Use the mic so we can hear you.

19          MR. RAMES:  Yes, Your Honor.  Yes.  This is

20  -- very frankly this is an issue that I have not been

21  given instructions on.

22          THE COURT:  Okay.

23          MR. RAMES:  I can't secure instructions on

24  -- in a -- in a moment if the Court will --

25          THE COURT:  Sure.

1          MR. RAMES:  -- allow me.  So I'll -- I'll -

2 -

3          THE COURT:  I just want -- I mean, it just

4 -- I just -- the reason why is I just want, when we -

5 - when it happens, I just want to make sure that

6 everybody is on the same page and everybody knows

7 what's happening.  So that nobody comes back later

8 and says, well, I didn't intend for -- or Mr. Russell

9 says, well, I didn't intend to go back to Superior

10 Court.  I wanted to stay in District Court.  And

11 then, you know, or you might have Judge Lewis who

12 will review everything and will say, well, yes, I'm

13 going to amend it, but I'm only going to agree to

14 remand the eleven and not the one.  And then you're

15 sitting there trying to figure out.  So I just want

16 us to do this like now figure it out all today and

17 then we can go into the sunset.

18          MR. RAMES:  This is -- is exactly right.

19 If I could have a moment in time.

20          THE COURT:  How much time do you need?

21          MR. RAMES:  Five minutes.

22          THE COURT:  All right.  We'll take a recess

23 for five minutes.

24          COURT CLERK:  All rise.

25          (Off the record 1:11 p.m.)

```
 1                    (On the record 1:18 p.m.)
 2               COURT CLERK:  All rise.  The Court is now
 3       in session.
 4               THE COURT:  Attorney Rames?
 5               MR. RAMES:  Yes, Your Honor.
 6               THE COURT:  Am I going to have a good
 7       remainder to my day?
 8               MR. RAMES:  Oh, yes, Your Honor.  Russell -
 9       - Russell case will stay in Federal Court.
10               THE COURT:  I thought I was going to have
11       the remainder to my day.
12               MR. RAMES:  But you and I'll hang out a
13       bit.
14               THE COURT:  Okay.  Okay.  Attorney Pate,
15       tell me.
16               MR. PATE:  Yes, Your Honor.  It comes a
17       little bit, you know, as a surprise for us, we --
18       we've worked this out with the defendants and -- and
19       agreed to remand on all the cases.  We didn't
20       actually have any issue and dispute, so I know that
21       the Court was trying to help but now it's going to
22       create issues and dispute.  So because this is not
23       being remanded, I would want a period of
24       jurisdictional discovery because Lockheed Martin has
25       a number of assets in Texas, and my belief, at least
```

1 from a quick Google search, is that their primary

2 principal place of business, they say it's Maryland,

3 but the assets they have in Texas way outstrip their

4 little offices in Maryland.

5   So I -- I would like at least sixty days on

6 the front end of the scheduling order to conduct

7 jurisdictional discovery on principal place of

8 business that Lockheed Martin, even though it may be

9 incorporated in Delaware, is a Texas principal place

10 of business.  And then after that, with that

11 evidence, we would move to remand.  Because we'd like

12 to keep all these cases together.

13   THE COURT:  Somebody -- the principal place

14 of business where?

15   MR. PATE:  In Texas.

16   THE COURT:  In Texas.

17   MR. PATE:  And because in -- in our mind,

18 our -- our issue we have by having one case left in

19 the Federal Court is the Court may come to contrary

20 rulings from the Superior Court, and then we end up

21 having inconsistent results between what the vast

22 majority of cases would be -- versus a ruling that

23 may come out of -- out of the Federal Court.  And

24 that's not (unintelligible).  So if there's a

25 possibility for a jurisdictional remand, we want to

1    investigate that.  And we just ask that you put

2    ninety-days of jurisdictional discovery in front of

3    the scheduling order, Your Honor.

4            MR. RAMES:  Your Honor, as in all such

5    cases, whether the Superior Court or the Federal

6    Court, we've been able to work out the general

7    parameters of a -- a scheduling order.  I don't have

8    any initial objection to having jurisdiction

9    discovery since the issue has been raised and counsel

10    -- and counsel and I, Lockheed Martin and Russell

11    will be working together to submit the Court a

12    scheduling order after Standard Rule 26 conference

13    (unintelligible).

14            THE COURT:  No, today was an initial

15    conference.

16            MR. RAMES:  Yes.

17            THE COURT:  So I'm ready to proceed.

18            MR. RAMES:  You ready to proceed?

19            THE COURT:  Yeah.  Today was an initial

20    conference, so you all should have done all of that

21    before today.  I was intending, you know, for -- to

22    do an initial conference on all the cases.  And then

23    Attorney Pate said that everybody agreed to go down

24    back to the Superior Court.  And as you know, I only

25    brought it up because the explanation for the basis

1    of why everything's going to go back would not have

2    been applicable to Russell.  That's why I asked the

3    question about it.  And you've indicated that you

4    didn't have any instructions on that, which I find

5    odd Attorney Rames because how would it -- if I

6    didn't ask the question and everybody said, okay,

7    we're going to go back to Superior Court, I presumed

8    that everybody had authority from their clients to go

9    back to Superior Court.

10              MR. RAMES:  Yes, Your Honor. Having raised

11    that issue of Mr. Russell's residence

12              THE COURT:  Because isn't it -- but isn't

13    it because the Plaintiffs can file wherever they want

14    to file.  And the defendants removed the case here,

15    which means if the defendants decide, well, yeah, we

16    know he's diverse, but you know, we don't mind

17    staying down in Superior Court, the defendants could

18    have also done that.  I guess what's given me pause

19    is that, but for me, asking the issue about Mr.

20    Russell's diversity or the issue of adding not

21    affecting him and the diversity, you all will be out

22    of here.

23              MR. RAMES:  Understood, Your Honor.

24    Circumstances have in fact changed and -- and --

25              THE COURT:  In five minutes?

1          MR. RAMES:  As of -- yes, in five minutes

2     and -- and -- but -- but -- but I take the Court's,

3     you know, state -- earlier statement in the manner it

4     was offered.  We have in fact come up with a scheduling

5     order in this case.  It is in -- in the cases it is in

6     the Rule 16.1 memorandum submitted to the Court.  In

7     fact,  with  this  hearing  we  will  stand  on  that

8     scheduling  order  and  if  the  Court  wants  to  have  an

9     initial  period  of  jurisdictional  discovery  that  is

10    something  that  makes  sense.   The  duration  of  that

11    period after the Judge, I think the counts said sixty

12    days and then he said ninety days.  But the --

13          THE COURT:  But the purpose of the

14    jurisdiction discovery, if I understand from Attorney

15    Pate is that Attorney Pate, you're saying that

16    Lockheed Martin has said that their principal place

17    of business for purposes of -- of the rules, their

18    citizenship is Maryland.  And you are saying that no,

19    it doesn't seem that way.  It seems that their

20    principal place of business and/or their citizenship

21    would be Texas.  Is that what you're saying?

22          MR. PATE:  That's correct, Your Honor.

23          THE COURT:  All right.  So as of today,

24    Lockheed Martin has said that their principal place

25    of business and citizenship is Maryland.

1               MR. RAMES:  That is correct.

2               THE COURT:  And you maintain Attorney Rames

3       that that is your client's citizenship?

4               MR. RAMES:  That's correct.

5               THE COURT:  And nothing would come out that

6       would establish anything else?

7               MR. RAMES:  Well, Your Honor, Lockheed

8       Martin is a -- is a multinational one of the -- one

9       of the -- one of the Fortune 500 companies.  It has

10      assets everywhere.

11              THE COURT:  No, I'm talking about --

12              MR. RAMES:  (unintelligible) substantial

13      assets in Texas.  That doesn't change the

14      (unintelligible).

15              THE COURT:  Okay.  Attorney Pate, what --

16      what aid or true assistance would it have if -- if

17      Lockheed Martin is saying that the principal place of

18      business and their citizenship is in Maryland?  What

19      discovery do you think that you would be able to

20      glean that will establish that what they're saying or

21      what they've asserted is not correct?

22              MR. PATE:  So Your Honor, yes.  First off,

23      there'll be interrogatories that are issued and

24      there's going to be a request for admissions, is a

25      discovery request for document production.  And then

1    we have a Rule 30(b)(6) once we get these documents,

2    we talk with a corporate representative.  We call it

3    the Death Star deposition.  You get all the documents

4    for written discovery, hopefully, you know, we serve

5    those and then within thirty days, but defendants are

6    always going to ask for more time.  So we did the

7    documents in about sixty days and we'd set up the

8    Rule 30(b)(6) after those sixty days, and hopefully

9    have it all completed within ninety days.

10                What I'm going to show over time is that

11    Lockheed Martin was started in Maryland, but that

12    almost now, all of the new businesses post 1990,

13    their expansion has been in Texas.  Now that's the

14    majority of their workforce.  That's the majority of

15    their principal investment.  That's the majority now

16    of their -- the management team and the majority of

17    where all their money and assets are.  And factually

18    Texas is their principal place of business.  They're

19    just -- and that the Maryland is a paper tiger

20    essentially.  It -- it is -- it has evolved over the

21    last thirty years that Texas is now the principal

22    place of business.  So that's what I hope to

23    establish.  And if that is established, then this

24    case would be remanded with all of the other cases to

25    be coordinated.

1          Another issue is, it may be when -- when we

2     start the discovery, sometimes defendants will

3     concede to permitting remand.  So we may not even

4     have to go through the ninety days once it kind of

5     goes up the ladder to the --

6          THE COURT:  Why can't you all just go to

7     discovery?  Why do you have to limit it to a

8     jurisdictional issue?  Why don't you just go in to

9     this discovery as you do?

10          MR. PATE:  We can proceed on joint -- we

11     can proceed on a joint track.  It's helpful though to

12     do the jurisdictional first in Federal Court.

13     Because the Federal Court is a little different than

14     the Superior Court, where it is a court of general

15     jurisdiction.  The issue in the Federal Court is

16     jurisdiction is a threshold issue.  And I have that

17     cited at footnote seven in the Plaintiff's motion to

18     leave the file amended complaint.  And so this is the

19     -- this is Judge Lewis jurisdiction must be resolved

20     before any other motion or issue.  That is Bacon v

21     Grapetree -- Grapetree Shores 10-CV-71 December 5th,

22     2013.  You've got another D.V.I. case the requirement

23     of the jurisdiction be established as a threshold

24     matter it's inflexible without exception, without

25     jurisdiction the Court cannot proceed at all in any

1      case.

2              Another District Court case, this is on St.

3      Thomas, because jurisdiction is fundamental in a

4      threshold matter, the Court will address plaintiff's

5      motion to dismiss for lack of subject matter

6      jurisdiction first.  Thomas versus Governor of Virgin

7      Islands is a D.V.I. case.  Jurisdiction is a

8      threshold matter and thus any challenge must be

9      resolved before any further proceeding.  So just as

10     the Federal Court is different than the Superior

11     Court, and it's just a little more prudent to put the

12     jurisdictional discovery first to just deal with that

13     issue and then get it done with, and then move into

14     the merits of the case.  I -- I'd just bring up I

15     guess the red dust in the Vindico case where it was a

16     class action.  It was in the Federal Court and the

17     coordinate merits rulings, but eventually it was

18     remanded.  And when it got down to the Superior

19     Court, Judge Molloy was just a little unhappy about

20     all kind of like the -- the inter meddling of the

21     merits issues.  The inter meddling and the merits

22     issues when the -- the Court he want -- he'd prefer

23     the Court to address the jurisdiction issues first.

24     So it's just a, I guess it's more of a kind of a way

25     of caution that the Circuit Courts kind of caution

1   the District Courts.

2         THE COURT:  Now, when you do this

3   jurisdictional discovery, the other cases are going

4   to be moving back to Superior Court, and I presume

5   they're going to be proceeding while you all are

6   here.  Just not you all, just Russell is here?

7         MR. PATE:  Your Honor, yes.  You know, what

8   I envision may be different, but what will happen is

9   the eleven cases would go back to Superior Court.

10  There's a potential of either Judge Willocks or Judge

11  Andrews taking them, and then they would decide

12  whether they want to put them into an existing master

13  case on like the back end of an existing case or set

14  up a new master case.  And that's what I'm talking

15  with my esteemed colleagues on what we would all

16  prefer.  We'll have some differences, obviously, but

17  we make that pitch to a Superior Court judge on kind

18  of scheduling.  And of course, just like here, the --

19  the judge makes the decision at the end of the day.

20  But they would be proceeding at the same time.

21         And in fact, we have potentially a November

22  trial on these Illumina cases in front of Judge

23  Andrews.  Now there are motions pending and maybe our

24  case is thrown out, but if not, it may be tried.

25  Maybe we have a global resolution before trial.

1    Maybe there's a verdict and an appeal.  But yes,

2    there -- there's a lot of action coming up in the

3    Superior Court.

4              THE COURT:  Okay.  All right.  And you said

5    you need ninety days to do jurisdictional discovery?

6              MR. PATE:  Your Honor, I would say ninety.

7    I've asked for a hundred and twenty in -- in some

8    tobacco cases.  That's a little more complicated, but

9    I say ninety because I'm going to go to my team.

10   We're going to try to put together written discovery

11   within the next ten days.  We issued that to Lockheed

12   Martin.  They have thirty days to respond.  They're

13   going to say they need more time.  They're a giant

14   company.  They're going to ask for sixty, so that's

15   going to be at seventy days, and we're going to have

16   our Rule 30(b)(6) deposition notice ready to send to

17   them.  They're going to negotiate with us on that.

18   They're always huge bites.  So in a perfect world, it

19   could be done in -- in ninety days.  It's just an

20   issue of getting the documents ready to do that

21   30(b)(6) at the day seventy or eighty mark.

22             And after that deposition, we'll have the

23   evidence or not have the evidence to make that motion

24   for remand at the, I'd say ten days after the ninety-

25   day mark.  We have to have our motion for remand

1    filing if -- if we have the evidence.  So that would

2    be -- it's in the legal world, it's -- it's -- that's

3    pretty vast, but I -- I try to keep it as short as

4    possible with the realities that exist.

5                THE COURT:  Okay.  Attorney Rames?

6                MR. RAMES:  Your Honor, definitely Lockheed

7    Martin doesn't disagree with the issue of -- of

8    prosecuting jurisdiction discovery in advance.

9                THE COURT:  I don't either.  I -- I was

10   just asking so I can have an understanding of -- of

11   the timing of how long it will take, or it would be

12   necessary to do that and then file the remand motion

13   and then get a ruling on the remand motion.  All the

14   while eleven other matters are gone.  That's --

15   that's the concern that I have.  This is why I'm  --

16   you know, I almost wish I didn't ask but I mean,

17   because, but go ahead.

18                MR. RAMES:  All I can say magistrate is

19   that -- is that Lockheed will, you know, adhere to

20   the -- the timeframe set out in the federal

21   procedure.  You know, when we receive the discovery,

22   we'll respond in -- in -- in the appropriate time.

23   And -- and, you know, obviously it's our obligation

24   to cooperate with stuff.  Discovery we'll do that.

25                THE COURT:  Is there any reason -- well,

1    that's -- that's a rough question because you don't

2    know what he's going to ask, but why, if it's solely

3    on the issue of jurisdiction, you kind of know what

4    they're -- what they're aiming at, why Lockheed

5    Martin couldn't respond in the thirty days that the

6    rules require.

7          MR. RAMES:  I -- I don't see any reason why

8    not.  You know, Lockheed Martin has been a -- a -- I

9    mean, Westmore, the new governor of -- of Maryland

10   would be quite surprised to find that Lockheed Martin

11   is no longer a domicile of the - domicile and citizen

12   of the State of Maryland.  You know, regardless of

13   where your assets are, I -- I don't think that's a --

14   that's a that's a key determinant.  It's the

15   principal's choice to make as to where he's going to

16   domicile or he's going to file his taxes.  You know,

17   so, you know, ultimately that's an issue that's going

18   to be decided, you know, by the Court on the merits.

19   But if there's going to be jurisdiction discovery

20   solely for the purpose of trying to drive this case

21   to Superior Court, then then I -- I hear that the

22   judge that -- that the magistrate doesn't -- doesn't

23   disagree with that.  And we'll make sure that we

24   adhere to the -- the contours and protocols of the

25   appropriate rules.

1      MR. PATE:  I -- I -- I fully support, if

2  Attorney Rames can get the documents back in thirty

3  days, that would be amazing.  We would move forward

4  quickly.  The problem with large companies, at least

5  in my experience, is Attorney Rames is not doing any

6  of the document collection.  No.  It's going to be

7  done by the corporate.  And --

8      THE COURT:  And they would have thirty days

9  to do it.

10      MR. PATE:  And -- and -- and corporate

11  timing it, that is usually extremely rare, but I

12  would love that.

13      THE COURT:  But I would like them to come -

14  - I would like them to comply with the rules of

15  procedure timing.

16      MR. PATE:  Yes.

17      THE COURT:  And so if it says thirty days

18  is the amount of time that they have to do it, I

19  would expect, excuse me, for purposes of -- of

20  determining whether a party is or is not domiciled in

21  one state or the other for purpose of jurisdiction,

22  that they would be able to do that within a

23  relatively -- the thirty days that the rules apply --

24  provide, in addition to the fact that it sounds like

25  your questions are going to be somewhat finite as to

1    what you're speaking.  It's only on the issue of

2    where they're domiciled for purposes of -- of their

3    citizenship.  There's only so many questions you can

4    ask about that.  And so -- and then there's only so

5    many responses that they can give to you about it.

6    That's just my point.

7         So I don't know why anybody would need

8    sixty days to respond to that.  I would hope that

9    Attorney Rames would implore on his clients that the

10   need for them to immediately address your responses

11   because kind of time will be of the essence.  Again,

12   I'm going to keep saying it, you know, there were

13   twelve of you.  Now there's just one of you.  Eleven

14   are gone.  And you just have this one lonesome case

15   just hanging around in -- in the -- in the -- in the

16   world, at least in the federal world.

17        And so in my view, whatever questions

18   you're going to send to them, they should prioritize

19   that to respond so that it involves, if there are any

20   issues of whether they responded appropriately or

21   not, or if there's need for a dispute conference on

22   the issue, whatever, we can do all of that within the

23   time necessary before you go and do a 30(b)(6).  And

24   before you're able to file your motion for remand and

25   then for them to respond to make it fully briefed,

1       then we -- we can do all that within a ninety-day

2       period, at least that way before the new year starts,

3       hopefully you would've had something that's fully

4       briefed.  Now, I don't know if you have a ruling

5       before the year is over, but you -- my hope is that

6       you have something fully briefed to determine whether

7       you stay here or not.

8              MR. PATE:  I think, Your Honor, now that

9       I've thought about kind of the informal letters that

10      were used before at the thirty-day mark, if they do

11      end up producing documents in discovery, what I

12      found, if they feel rushed, you get truncated answers

13      or you don't get the documents, then I can end up

14      just coming to the Court.  Or maybe I have to talk

15      with Attorney Rames to say, do they really need more

16      time?  That could -- and then we'll find out if they

17      need fifteen or twenty more days.  Or if not, then we

18      may just be coming to the Court on like a lack of

19      production.  But I -- I -- I -- I fully -- it's just

20      in my experience, most times on a large company like

21      this, they do not turn around discovery in thirty

22      days.  But that gives me --

23             THE COURT:  What if both of you agreed that

24      the response period will be forty-five days?

25             MR. PATE:  Wonderful.

1          THE COURT:  And then nobody needs to go ask

2     back for any additional time, which means the order I

3     will issue would order that they must respond within

4     forty-five days of receipt of the discovery.

5          MR. RAMES:  Yeah.  I mean, yes, the problem

6     -- the problem with that, Your Honor, is that we

7     don't know what's going to be asked.

8          THE COURT:  I un -- I understand that.

9          MR. RAMES:  We have no idea what's coming

10     into us in so far as discovery – discovery

11     (unintelligible).  I mean, what, you know -- you

12     know, I could just as well see, you know, somebody

13     saying, you know, counsel saying, you know, give me a

14     -- a list of -- of all the inventory that Lockheed

15     Martin has in Tyler, Texas.  Give me a list of all

16     the bank accounts that Lockheed Martin has in -- in

17     Dallas.  Give me a list of, no, you see, the thing

18     about that is if -- if -- if -- if this is focused on

19     the legal issue of what the domicile is of a

20     particular company, how that domicile is determined

21     according to Maryland law, okay, that's one thing.

22          But if counsel is going to use this as a

23     fishing expedition to determine how many widgets

24     Lockheed produces on a regular basis, you know, in

25     the hill country, east of Dallas, that's an entirely

```
1    different matter.  You know, I don't have any problem

2    with somebody determining (unintelligible)

3    determining what the domicile of the company is.

4    Relatively simple, straightforward, easy, easy

5    questions, easy answers.  You know, where do you file

6    your taxes?  Where was your articles of Incorporation

7    file?  Where was your, you know, amendments to audits

8    of corporation file?  Have you ever entered into a

9    resolution by the company to change the domicile of

10   the company to some other state.  On those things.

11   Very straightforward and very easy to answer.

12            You know, but for somebody to say, you

13   know, listen, you know, tell me, you know, how many

14   leases you have, you know, in this -- in -- in -- in

15   --.  I mean, you know, and where -- and what are

16   those leases for?  And who are those leases with? I

17   mean, you know, this is --

18            THE COURT:  Is that -- is that how you

19   determine a person's domicile?

20            MR. RAMES:  Well, he's talking about, you

21   know, they have assets.  A lot of people have assets,

22   in fact, well, assets in California, assets in

23   Florida, assets in New York.  I mean --

24            THE COURT:  But is that how -- but is that

25   how you determine a person's domicile?
```

1          MR. RAMES:  Exactly.  And if -- if

2    questions that are essentially off topic that are

3    intrusive are asked in this context --

4          THE COURT:  Your response would be what?

5          MR. RAMES:  Then we are definitely, we are

6    -- we start by blowing the dates.

7          THE COURT:  No, no, no, no.  You don't

8    start by blowing the dates.  You start by answering.

9    If they're irrelevant and or you have some objection

10   to them, then you object.  That wouldn't be your

11   answer?  Wouldn't that be your answer?

12         MR. RAMES:  (unintelligible) to decline an

13   answer.

14         THE COURT:  Or whatever, whatever.  I don't

15   know.  I'm not telling you what -- how to answer.

16   I'm just saying to you, the issue wouldn't be to blow

17   the deadline because then you'll be back in here with

18   me.  The issue is going to be you have to answer, and

19   if you believe that whatever Attorney Pate is asking

20   you has absolutely no relevance to the issue of

21   domicile, then wouldn't that be your objection and

22   your response?

23         MR. RAMES:  That would be our objection and

24   response, Your Honor.

25         THE COURT:  And you need sixty days to

1    write that?  When you read the question, and you know

2    that that question in your mind has absolutely

3    nothing to do with how one determines domicile.

4    Can't you just say that in your response and then

5    it'll be up to Attorney Pate to -- to request a meet

6    and confer with you, because I don't believe it's

7    this, whatever.  And if you need to come back to the

8    Court, you do that.  But I guess what I'm trying to

9    understand is if the -- the -- the -- if the

10   discovery is based on the jurisdictional discovery, I

11   mean is based on trying to determine what Lockheed

12   Martin's actual domicile is for purposes of

13   citizenship in this court's view, the questions that

14   can be asked are limited.

15              MR. RAMES:  Understood.

16              THE COURT:  You can only ask the questions

17   that are relevant to that specific issue, and either

18   they accept your answers or they don't.  If they

19   don't, then they have got to explain why they don't

20   accept it.  Right.  And if they accept your answers,

21   then we don't have an issue.  Then your domicile is

22   where you said it was, and then we will proceed,

23   right?

24              MR. RAMES:  Yes, Your Honor.

25              THE COURT:  I guess what I'm trying to get

1     both of you to understand is I'm not trying -- I

2     believe, and I agree, that jurisdictional discovery

3     should occur first since it's being put as an issue,

4     right, by the Plaintiffs.  But I also don't want to

5     turn in the issue of jurisdictional discovery into a

6     whole new lawsuit.  That's what I'm trying to avoid.

7     We're not going to be here six, seven months fighting

8     over whether your client is a citizenship -- a

9     citizen of Maryland or Texas.  That's my point.  So I

10    don't know what his questions are going to be, but I

11    expect that his questions are going to be solely

12    related to how one determines someone's citizenship

13    or domicile.  Right?

14          And I expect your answers, your client's

15    responses to the questions whether -- and if there

16    are questions that you feel are outside of the realm

17    of what determines that, then I expect you to say

18    that.  If there are questions like you just said, you

19    know, where do you file, where do you do amendments,

20    all that stuff, and you have the answers, then just

21    give him the answers.  If you strongly believe that

22    your citizenship -- your client's citizenship is

23    nowhere else but Maryland, what do you care what he

24    writes?

25          MR. RAMES:  Understood.  Understood.

1           THE COURT:  That's my point.

2           MR. RAMES:  All right.  Well, you know, as

3     I said earlier a lot of people (unintelligible) of

4     course professional.  The rules of procedure and --

5     and of court will allow for the additional fifteen

6     days out to forty-five.  I think that would be

7     helpful.

8           THE COURT:  Okay.  And Attorney Pate, when

9     do you think that you'll be able to get these

10    questions out to Lockheed Martin?

11          MR. PATE:  Your Honor, I believe in about

12    ten days is my hope.  So the idea would be, I know

13    you'll be issuing your scheduling order in the next

14    day or couple days.

15          THE COURT:  Well, no, I'm not going to

16    issue a scheduling order now.  I'm going to wait

17    until you all figure out what you're doing.

18          MR. PATE:  Oh, good.

19          THE COURT:  With this traditional issue.

20          MR. PATE:  Wonderful.

21          THE COURT:  Because what's the point of

22    doing that if -- if you may not be here or not?  I

23    don't know.  But I mean, I can do it.  But you'll --

24    you'll -- you'll just, in other words, you just have

25    the time counting against you when instead of --

1    instead of seeking discovery in the things of your

2    case, you're focusing on jurisdictional issues only,

3    and then your six or seven or eight months it's

4    running and then you have it because you've been

5    doing three or four months of jurisdictional, you

6    don't have enough time to do your case in the event

7    that the matter stays here and you've just wasted

8    everybody's time.

9         MR. PATE:  So I -- I -- if I had to pick a

10   date certain I would say if we went a week and a few

11   days, so Wednes -- next Wednesday, Thursday, Monday,

12   whatever the day Monday is, the 25th, so that we

13   would issue our discovery that day.  And we ask the

14   Court to -- I -- I still would, I believe it's fair,

15   rational, just from experience that a ninety day

16   period, but at the end of that ninety day period, we

17   have ten days to file our motion for remand or at

18   least advise the Court at the end of that ninety

19   days, whether we'll be seeking, filing a motion for

20   remand or if we have viewed all the facts in the

21   record and, and decided that it's not sup --

22   supported, if that makes sense to the Court.

23        THE COURT:  Okay.  Let me make sure I get

24   this right.  So the 25th of September, you're going

25   to serve Lockheed Martin with your jurisdictional

1    discovery, correct?

2                    MR. PATE:  Yes, Your Honor.

3                    THE COURT:  All right.  And then by

4    November the 10th, which is forty-five days after

5    Lockheed Martin will file their responses, right?

6                    MR. PATE:  Yes, Your Honor.

7                    THE COURT:  And once they file their

8    responses, how much time do you need to determine

9    whether you're going to file a motion to remand or

10   not?

11                   MR. PATE:  Well, we most likely would use

12   those documents in a -- in a Rule 30(b)(6) corporate

13   deposition to discuss those documents.

14                   THE COURT:  All right.  So when will you

15   set the 30(b)(6) deposition?

16                   MR. PATE:  My goal would be early to mid-

17   December.

18                   THE COURT:  Early to mid-December.  All

19   right.

20                   MR. PATE:  We'll be filing (unintelligible)

21   issue is that from November 10th through the end of

22   November, Lockheed Martin Attorney Rames and I will

23   be filing over the Rule 36(b)(6) notice.

24                   THE COURT:  But then you will have -- but

25   then won't they have a thirty period to respond to

1    your notice?

2              MR. PATE:  It -- it is a meet and confer.

3    So we're actually doing this on -- in the Superior

4    Court cases on a different issue.  But usually that

5    process of refining the 30(b)(6) notice is multiple

6    meet and confers over about two weeks.  So --

7              THE COURT:  Right.  But once you've

8    completed what the topics are, won't Lockheed Martin

9    have thirty days to prepare themselves for the

10   deposition?

11             MR. PATE:  Yes.

12             THE COURT:  Meaning -- meaning if you

13   notice it in December, you won't be having this until

14   January?

15             MR. PATE:  No, we would be -- no, we  -- we

16   provide them with -- after we receive the documents,

17   we'd be providing them the Rule 30(b)(6) notice in

18   November.  They'd be preparing their witnesses for a

19   early to mid-December.  But they'll also -- their

20   attorneys will come back with us saying, we don't

21   agree, this is too broad the scope.  And then we'd

22   say, well, we can narrow here, but we definitely need

23   somebody to talk about this.  This is very important

24   for us --

25             THE COURT:  So you're saying like by

1    December 15th you'll have a 30(b)(6) deposition?

2              MR. PATE:  That -- that would be the hope

3    to get this wrapped up within ninety days.  Yes, Your

4    Honor.  And then to have the motion filed in early

5    January.

6              THE COURT:  And after you deposed them, how

7    much time do you need to prepare your -- your -- your

8    motion to remand if you intend to file one?

9              MR. PATE:  I think my -- my proposal was

10   that at the end of the ninety days, we'd advise the

11   Court whether we're going to seek remand or not and

12   have ten days from that ninety days to file a motion.

13   So that would be --

14             THE COURT:  But you are aware that your

15   ninety days would've ended December 13th, October,

16   November – let me say October, December 13th.

17             MR. PATE:  Monday, September 25th when --

18             THE COURT:  Oh, Monday, December 25th will

19   be ninety days.

20             MR. PATE:  Yeah.  So then the next ten days

21   will be like January 4th to January 5th.

22             THE COURT:  You're going to do work during

23   the holidays?

24             MR. PATE:  Every year unfortunately, I

25   remember working on St. Thomas on Christmas Day, and

```
 1        I had a call from a woman in West Virginia about

 2        being (unintelligible) Sugar Bay on Christmas Day.  I

 3        answered saying, ho, ho, ho, Merry Christmas.  And it

 4        was not a prank call.  It was an actual lady whose

 5        daughter was injured.  Yeah.

 6                THE COURT:  People shouldn't work during

 7        the holidays.

 8                MR. PATE:  I know, Your Honor.

 9                THE COURT:  At least the lawyers shouldn't,

10        I mean, you should like do like regular things that

11        regular people do during --

12                MR. PATE:  That was before --

13                THE COURT:  -- the holidays.

14                MR. PATE:  -- any family, I mean.

15                THE COURT:  Oh, okay.

16                MR. PATE:  No – no kids or spouse then.

17                THE COURT:  Well, let me ask this.  Because

18        the days I'm looking at, based on the discussion

19        we're having, is that you're going to issue your

20        juris -- your jurisdictional discovery by September

21        25th, right?

22                MR. PATE:  Correct.

23                THE COURT:  Lockheed Martin will have

24        forty-five days to respond to that.  So up to

25        November 10th to file their responses to you, right?
```

1          MR. PATE:  That's correct.

2          THE COURT:  All right.  And then you'll

3     depose do a 30(b)(6) deposition December 15th?

4          MR. PATE:  On or before.  Yes.

5          THE COURT:  All right.  And then you said

6     you would need time to, I guess, review what happens

7     after that and then determine if you are going to

8     file a motion to remand or not.

9          MR. PATE:  Correct.  We -- we try to order

10    the transcript expedited, but you know, we -- we'd

11    end up having, say December 15th, we say the

12    transcript takes five to seven days.  But yes, my

13    hope would -- would be to let the Court know as soon

14    as possible.

15         THE COURT:  Okay.  So that's four months.

16    All right.  Are the parties okay, and by parties, I

17    mean Attorney Rames and Attorney -- I mean -- I mean

18    Russell and Lockheed with the Plaintiff giving or

19    issuing jurisdictional discovery by September 25th,

20    with the defendant responding by November 10th, with

21    the 30(b)(6) deposition occurring on or before

22    December the 15th, 2023, and with plaintiff filing

23    either the motion to remand or a notice of no intent

24    to file a motion to remand by January 19th, 2024?

25         MR. RAMES:  Your Honor, the part of the

1    prob -- part of the issue of compliance with the

2    rules of (unintelligible) is the fact that the

3    defense in this case, Lockheed Martin has the

4    opportunity and the responsibility to take reports to

5    the Court, take -- take reports to the Court if the -

6    - if we believe that there are discovery abuses or if

7    there are inquiries made, questions asked, topics

8    raised that are irrelevant and/or are otherwise

9    objectionable and are the subject of the -- now --

10   now, of course, when counsel talks about the parties

11   meet and confer, a meet and confer, we don't always

12   come to an agreement.  And when you don't come to an

13   agreement in a meet and confer, there is discovery

14   litigation, there is discovery motion to file.  And I

15   don't have a problem with agreeing to the Court's

16   schedule.  But the Court has to of course, be aware

17   that that schedule is subject to discovery motions

18   being filed.  If in fact we --

19          THE COURT:  Aren't all -- aren't all

20   deadlines subject in discovery world subject to

21   discovery disputes that may come up?  I don't

22   understand.  Aren't they -- isn't it every case that

23   that can happen?

24          MR. RAMES:  Yes.  In fact, yes, in fact,

25   Your Honor, that is in fact true.  And we have an

1    example here of the 30(b)(6) deposition that we're

2    trying to work out in the current set of -- in the

3    current management case where, you know, five dozen

4    questions were asked.  And when the meet and confer

5    took place, the actual number of questions increased,

6    not decreased.  You know, so we -- we have absolutely

7    no idea what we're going to see when we see a Rule

8    30(b)(6) list of topics.  And if those topics are

9    objectionable and we can't resolve in meet and

10   confer, then of course we're going to come back to

11   the Court on a motion to squash, come back to the

12   Court on a motion to squash that December 15th date

13   cannot stand.

14            THE COURT:  Why not?

15            MR. RAMES:  Because unless the Court rules

16   within a period of maybe days on one, that's the

17   issue.

18            THE COURT:  Well, who will it be before?

19            MR. RAMES:  It will be before Your Honor.

20            THE COURT:  Have you ever waited a long

21   time?

22            MR. RAMES:  Thank you, Your Honor.

23            THE COURT:  Okay.

24            MR. RAMES:  I -- I understand what the

25   Court is saying and -- and these matters may come

1 back to court

2    THE COURT:  Because at the end of the day.

3 Right?  It is the Plaintiff's burden to determine

4 based on what they've argued today or stated today,

5 to determine that your domi -- your client's domicile

6 is not Maryland.  The Court has to accept your --

7 your filing, your Rule 7 filing on your client's

8 citizenship, which you say is Maryland.  Right?

9 There is nothing right now on the record to show that

10 the citizenship of Lockheed Martin is not Maryland.

11    MR. RAMES:  That is correct.

12    THE COURT:  Right?

13    MR. RAMES:  That is correct.

14    THE COURT:  It is up to the Plaintiffs to

15 prove to the Court that it's not.  Right?  So it

16 moves them to get what they need to get done on time

17 to comply with the deadline the Court has set.

18 That's what I'm saying.  And so in my view, again,

19 the -- the -- the parameters are finite.  There's

20 only a certain amount of ways you can prove

21 somebody's domicile.  And if the Plaintiffs are

22 including topics that have nothing to do, that have

23 nothing to do with establishing someone's domicile,

24 then you file or request the appropriate dispute

25 immediately.  In other words, don't wait ten days to

```
1       do it.  If you see it and it's time and you all can't

2       figure it out, then do it and we will address it

3       immediately.  So you all don't have the running

4       around the place waiting and figuring out what, I

5       don't know if it's going to be this is going to

6       happen or that's going to happen.  You know, you have

7       to make sure that you all are moving these matters

8       on.

9                MR. RAMES:  Understood.

10               THE COURT:  Right?

11               MR. RAMES:  Understood.  Thank you.

12               THE COURT:  Now, I'm not the person who

13      would decide on your jurisdictional issues.  That

14      would be the District Judge, but your dispute on what

15      topics or what discovery dispute, I mean, I would

16      presume are what I get to do.  But the decision

17      itself on whether this court will have jurisdiction,

18      unless you all consent to my jurisdiction or you

19      consent to me ruling on your jurisdictional issues,

20      that will still be with the district judge.  I'm only

21      addressing the -- the discovery issue.  Nothing else.

22      Now, the only, I guess the only fly in the ointment

23      is that you disagree with me, then you can always

24      file a notice of objection upstairs, then that's up

25      to you all, that's out of my hands and you all figure
```

1    it out and you all will proceed whenever Judge Lewis

2    rules or determines that.

3         But I hear what you're saying.  I don't

4    want you to think that I don't hear what you're

5    saying.  I hear what you're saying, that you don't

6    want to run into a situation where you can't comply

7    with a December 15th date because you all are

8    wrangling over topics.  I understand that.  But

9    between November 10th and December 15th, that's like

10   thirty-five days.  My only concern though, Attorney

11   Pate again, is that Lockheed Martin has the right to

12   thirty days to prepare for whatever the final topics

13   are, which means you can't be running into December

14   8th and you're still talking about the topics.

15   Because then if the deposition certain occurred by

16   December the 15th, then that would mean they only

17   have seven days to prepare, which I don't think the

18   rules permit.

19        MR. PATE:  Correct, Your Honor.

20        THE COURT:  That's -- no, that's totally my

21   concern.  So is there any way that you have -- is

22   there any way that you can at least start figuring

23   out what the topics of a 30(b)(6) would be before

24   November the 10th?

25        MR. PATE:  Yes.

1          THE COURT:  Because there are only so many

2      questions that you can ask really that's related to

3      it.  Isn't that a possibility that you all can at

4      least attend to at least work on what those topics

5      would be before?  Unless you know, you know, unless

6      when the response comes, something else is in there

7      that requires you to ask a different kind of

8      question.  But I don't know.  You tell me.

9          MR. PATE:  Your Honor, feel free to put in

10     your order that the 30(b)(6) notice be issued before

11     November 10th.  You can look at the calendar to make

12     sure it doesn't fall on a weekend.  But November 6, 7

13     --

14         THE COURT:  November 10th is a Friday.

15         MR. PATE:  Okay.  Perfect.  We'll issue it

16     on or before that date.  Thank you, Your Honor.  And

17     I agree with Attorney Rames as we -- we worked

18     together.  We bring any dispute before the Court.

19     This court has obviously shown exceedingly quick

20     turnaround on disputes.  So thank you Your Honor for

21     that availability.

22         THE COURT:  Attorney Rames?

23         MR. RAMES:  Yes, Your Honor,

24         THE COURT:  And your response?

25         MR. RAMES:  (Off mic)  Your Honor, based

1    upon the -- this call with the Court you know, the --

2    the establishment of the calendar along the lines

3    that you suggested is -- is acceptable.  And we will,

4    as I said you adhere the appropriate rules and -- and

5    make sure that we get to any dispute with -- before

6    the Court moment carefully upon determining that they

7    (unintelligible) dispute.

8         THE COURT:  Okay.

9         MR. PATE:  Thank you, Your Honor, for your

10   time.

11        THE COURT:  All right.  All right. -

12   Anything else from anybody?

13        MR. PATE:  An order that we never work on

14   Christmas again.

15        THE COURT:  Yeah.  Well, I won't be so --

16   all right.  Now does that mean, let me ask George.

17   All right.  So I have George listed for an informal

18   conference for today, which is on the issue of some

19   discovery stuff that came out.  Is George one of them

20   that's also going back to the Superior Court?

21        MR. PATE:  Your Honor, I have not let

22   esteemed counsel Jacques Semmelman talk.

23        THE COURT:  Oh.

24        MR. PATE:  And he can say that --

25        THE COURT:  And you flew all this way.  So

1       let's allow you to say something.  Go ahead.

2               MR. SEMMELMAN:  Thank you very much, Your

3       Honor.  And as I have communicated to Mr. Pate and

4       Mr. Yelton, we --

5               THE COURT:  Oh, one moment.  I think I have

6       to let the clerk call the case because it's listed

7       separately.  So let's let her do that.  This would be

8       George and Arnold, the one for two o'clock.  Oh,

9       that's why you wouldn't have it.  Strike that.  It's

10      informal.  That's why.  Go ahead.  I'm sorry.

11              MR. SEMMELMAN:  Not at all.  Thank you.

12      Thank you again, Your Honor.  So I've -- I've been in

13      conversation with Mr. Pate and Mr. Yelton.  And the

14      George case and the Arnold case are among the cases

15      as to which we will not be proposing the remand.  So

16      that -- that is our conversation.

17              THE COURT:  Okay.  Now my next question is,

18      when is this joint notice to the Court of remand

19      coming in?  Because until it comes in, as far as I'm

20      concerned, you're in this Court and I should be

21      proceeding.

22              MR. PATE:  Your Honor, we're -- we're

23      filing in the Arnold and the George case today a

24      notice and no opposition for those amended

25      complaints.  And at that point --

**Associated Reporters Int'l., Inc.   518-465-8029**

1           THE COURT:  And an agreement to remand.

2     Because you filed them together as opposed to filing

3     a motion to amend and a motion for remand, you put it

4     together.

5           MR. PATE:  Yes.

6           THE COURT:  So will the stipulation include

7     no opposition to the motion to amend and no

8     opposition to remand?  Because that's what it should

9     be.

10          MR. PATE:  Attorney Semmelman, may I let

11    you decide how you want to proceed?

12          MR SEMMELMAN:  Yes.  Yes.  And if -- if I

13    may take the podium, Your Honor.  So I -- I'm not

14    sure that the word stipulation is exact precise term

15    here.  What it is, is we have agreed that we will not

16    oppose the pending motions in Arnold and George to

17    amend the complaints and to seek remand from the

18    District Court.  And we are prepared to work with

19    Attorney Pate to -- to put a -- an agreement in those

20    terms into the record.  Presumably that will satisfy

21    what the Court is -- is asking about.  And if not,

22    I'm happy to respond.

23          THE COURT:  It's because when you say that

24    you agree not to oppose, it is not the same as I

25    agree to go back to Superior Court.  Because that

1    still means when you -- when you just don't oppose,

2    it's an unopposed motion, it means that the Court is

3    still going through the motion to determine whether

4    to grant or not a motion to amend and a remand.

5    That's what that is.  And which means that you all

6    will remain in this court until the district judge

7    rules on it.  Now, if it is your position, all of

8    your positions that yes, (unintelligible) should be

9    added, and we should go back down there, then simply

10   stipulating to that fact means that the district

11   judge simply has to just sign off on the fact that

12   the parties have agreed to amend the complaint and

13   return down to Superior Court.

14            MR. SEMMELMAN:  And -- and I understand

15   that there's a nuance here.  And while the -- the

16   outcome will not make a difference because we will

17   end up without any opposition in the Superior Court

18   in the time.  Right now, my -- my instructions are

19   that, and this is based on an exchange of -- of the

20   emails and correspondence a few days ago, culminating

21   in a statement in the -- in the Consolidated Rule

22   16.1 submission of a few days ago, that based on

23   certain representations that are spelled out in the

24   Rule 16.1 submission Glencore will not oppose that

25   the -- the two pending motions in -- in -- in Arnold

1      and George or the anticipated motions in the other

2      cases.  But I know we're just talking about Arnold

3      and George right now.

4                 THE COURT:  Right.

5                 MR. SEMMELMAN:  Now if -- if -- if the --

6      if the detail there is going to be modified even

7      though the outcome will -- will be the same --.

8                 THE COURT:  No, no, no, no.  If -- if it is

9      your intent to simply just say you don't oppose,

10      that's your right. It's not an issue.  The result

11      probably would be the same.  I -- I don't see in

12      either scenario that it not be the same.  You don't

13      oppose it, and the Court grants the motion to amend,

14      I would presume clearly, you know, diversity would

15      have been destroyed and you can't be here anyway.

16      Right?  So I don't know that, that the results will

17      be different.  I'm just saying that to the extent if

18      -- if you -- if it's important to your clients to say

19      that you just don't oppose it as opposed to

20      stipulating to it, then I don't really care.  If

21      that's what you all want to do, do it.  The -- what's

22      important to me is that it gets in because the longer

23      that you are out there and it's not filed with the

24      Court, then I should be proceeding with you all like

25      you're here.

1          MR. SEMMELMAN:  I recognize that and I'm

2     certainly not looking to impose unnecessary work on

3     this Court.

4          THE COURT:  Well, I know that.  I don't

5     think that you are.  I'm just saying that get it in

6     gentlemen.  If you all have already agreed that's

7     what you're going to do, then file it, whatever you

8     want to call it.  I don't care what you call it.

9     Just make sure that whatever you're filing matches

10    the event before the clerk send it back to you and

11    telling you that you didn't do it right, but just get

12    it into the Court so that the Court can act on it.

13          (The conference concluded at 2:07 p.m.)

14              CERTIFICATION

15  I, Judith Spriggs, court approved transcriber, certify that

16  the foregoing is a correct transcription from the official

17  electronic sound recording of the proceeding in the above-

18  entitled matter.

19

20  _____/

21  Judith Spriggs
    Associated Reporters Int'l., Inc.   13th day of December, 2023

22

23

24

25